SANDRA CURRIER,

        Plaintiff,

                                        Case No. 21-cv-419-pp

   v.

LAWGIX LAWYERS, LLC,

        Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO MIILWAUKEE COUNTY CIRCUIT COURT AND AWARDING PLAINTIFF FEES AND COSTS ASSOCIATED WITH LITIGATING REMOVAL (DKT. NO. 11)**

---

On February 26, 2021, the plaintiff filed a complaint in Milwaukee County Circuit Court bringing claims on behalf of herself and others under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§1692(a)-(e), and the Wisconsin Consumer Act (WCA), Wis. Stat. §421.102(2). Dkt. No. 1-1. On April 2, 2021, the defendant removed the case to the Eastern District of Wisconsin. Dkt. No. 1.

On September 8, 2021, the plaintiff filed a motion to remand the case to state court, arguing that this court lacks subject matter jurisdiction. Dkt. No. 11. She argues that the complaint does not allege a "concrete injury" sufficient to confer Article III standing. Dkt. No. 12 at 1. The plaintiff also asks the court to award her fees incurred as a result of the defendant's improper removal. Dkt. No. 11 at 1. The court will grant the plaintiff's motion.

1

## I.    Background

### A.    Factual Allegations

Plaintiff Sandra Currier resides in Milwaukee County, Wisconsin. Dkt. No. 1-1 at 5, ¶3. She alleges that the defendant, Lawgix Lawyers, LLC, is an LLC with its principal place of business in Pittsburgh, Pennsylvania. Id. at 5, ¶6. The plaintiff says that the defendant "is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others" and does "substantial business in Wisconsin." Id. at 5, ¶¶7-8. She also asserts that the defendant is a "high volume debt collector." Id. at 8, ¶27.

The plaintiff alleges that on January 29, 2021, the defendant mailed her a debt collection letter about a debt supposedly owed to "U.S. Bank National Association." Id. at 5, ¶10.[1] She says that "upon information and belief," the debt referenced in the letter "was incurred for personal, family, or household purposes." Id. at 5, ¶11. The plaintiff asserts that the letter is a computer-generated form debt collection letter used by the defendant for debt-collection purposes, with her specific information inserted by computer. Id. at 6, ¶¶12-13. She says that "[u]on information and belief," this was the first letter sent to her by the defendant regarding the alleged debt. Id. at 6, ¶14. The plaintiff

---

[1] The state court complaint indicates that the plaintiff attached the letter as Exhibit A. Dkt. No. 1-1 at 5, ¶10. There *is* a page with the words "Exhibit A" on it that follows the copy of the complaint that is on this court's docket. Id. at 18. But the page that follows is an electronic filing notice from the Milwaukee County Circuit Court. Id. at 19. The defendant attached the letter to its brief in opposition to remand. Dkt. No. 15 at 21.

asserts that the letter "is on Defendant Lawgix's letterhead, which identifies the organization as Lawgix Lawyers, LLC," and that it includes a signature line reading "Lawgix Lawyers, LLC." Id. at 6, ¶¶16-17. She claims that the letter includes a line of text stating, "[o]ur firm has been retained by U.S. Bank National Association regarding the balance owed on the above referenced account," and another stating "[i]f a lawsuit becomes necessary, our office will manage all matters related to the lawsuit. . . ." Id. at 6, ¶¶18-19. She asserts that the letter "falsely implies that an attorney was meaningfully involved in the collection of the alleged debt in January 2021." Id. at 6, ¶20. The plaintiff says that an "unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been 'retained' to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file." Id. at 7, ¶21. She maintains that the letter does not include disclaimer language notifying the recipient that the lawyer is acting as a debt collector. Id. at 7, ¶26. She also states, "[u]pon information and belief," that at the time the letter was mailed to her, "no attorney had assessed the validity of the alleged debts to the standards required of an attorney," that the only employees of the defendant who were directly involved in the consumer debt-collection process are non-lawyers, that no lawyer had reviewed any documentation regarding her alleged debt and that no lawyer had exercised professional judgment to conclude that she was delinquent on the debt or was meaningfully involved to send the letter to the plaintiff. Id. at 8, ¶¶28-29, 32-33.

The plaintiff alleges that immediately following the Validation Notice on the letter, the following language appears: "[p]ursuant to our policy, the term 'written notification' includes a facsimile or an email sent by you in addition to any physical correspondence." Id. at 8, ¶34. She alleges that this language was misleading and that she, personally, was misled and confused. Id. at 9, ¶¶37-40. She further asserts that "[t]he unsophisticated consumer would be misled and confused by Exhibit A." Id. at 9, ¶41.

B.     Claims

The complaint makes several claims under the FDCPA and the WCA. In Counts I and II, the plaintiff alleges that the defendant violated the FDCPA and WCA by "creat[ing] the false impression that an attorney at Lawgix had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and [the letter] itself, and 'reached a considered, professional judgment that the debtor [was] delinquent and [was] a candidate for legal action,' at the time that the letters were mailed to Plaintiff and class members." Id. at 11, ¶¶67, 71. She alleges that this violated 15 U.S.C. §§1692e, 1692e(2)(a), 1692e(3), 1692e(5) and 1692e(10). Id. at 11, ¶69. She also states that this violated Wis. Stat. §§426.110, 427.104(1)(g), 427.104(1)(h), 427.104(l)(j) and 427.104(1)(k). Id. at 12, ¶73.

In Count III, the plaintiff alleges that the defendant's letter makes false, deceptive and misleading representations to the unsophisticated consumer by stating, "[p]ursuant to our policy, 'written notice' includes a facsimile or an email sent by you . . . '" Id. at 15, ¶75. She asserts that that this line

4

overshadowed and contradicted the Validation Notice. Id. The plaintiff claims that this violated 15 U.S.C. §§1692e, 1692e(5), 1692e(10) and 1692g(b). Id. at 15, ¶76.

In Count IV, the plaintiff asserts that the same line about written notice "threatens to refuse to process certain disputes and otherwise a [sic] deceptive means of enforcing a debt arising from consumer credit transactions." Id. at 15, ¶78. She says that this violated Wis. Stat. §§426.110, 427.104(1)(g), 417.104(1)(h) and 427.104(1)(j). Id. at 16, ¶79.

## II.    Motion to Remand (Dkt. No. 11)

### A.    Parties' Arguments

The plaintiff argues that the complaint does not allege a concrete injury. Dkt. No. 12 at 1. She asserts that "[t]he Seventh Circuit has explained that a plaintiff does not have standing under Article III to raise an FDCPA claim in federal court unless he acts on the misinformation or confusing information in the letter." Id. (citing Pennell v. Glob. Tr. Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021)) (citations omitted). She asserts that the complaint does not allege that she took such action. Id. at 2.

The plaintiff argues that the burden of establishing federal jurisdiction—including Article III standing—rests with the party seeking removal. Id. at 3 (citing Collier v. SP Plus Corp., 889 F.3d 894, 896 (7th Cir. 2018)). She observes that the defendant attempted to assert that the court has jurisdiction under 28 U.S.C. §1441, but the plaintiff argues that "a district court does not have subject matter jurisdiction over an FDCPA action unless the plaintiff

5

expressly alleges that the violation caused them to act to their detriment." Id. at 4 (citing Gunn v. Thrasher, Buschmann & Voelkel, P.C., 982 F.3d 1069 (7th Cir. 2020)). She argues that the Seventh Circuit has rejected the argument that a defendant may remove a case from state to federal court every time a plaintiff asserts a claim under a federal statute. Id. at 4-5 (citing Collier, 889 F.3d at 896).

The defendant characterizes the plaintiff's remand motion as "a 'Hail Mary' forum shopping attempt conspicuously disguised as a laudable motion to remand." Dkt. No. 15 at 1. The defendant asserts that because it invoked federal jurisdiction through removal, it was required only to "proffer a 'plausible allegation' concerning the Court's basis for jurisdiction and evidence of standing is not required." Id. at 3 (citing multiple cases, including Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87-89 (2014)) (quotation and citation omitted). It also argues, however, that a violation of 15 U.S.C. §1692e(3) is a "concrete injury" sufficient to confer Article III standing. Id. at 5. It asserts that the plaintiff's receipt of the "G-Notice" and her allegation of deception suffices. Id.

The defendant argues that the plaintiff "alleges the G-Notice both: (1) violated § 1692e(3) of the FDPCA, and (2) 'misled and confused' her." Id. at 8. It asserts that this claim "necessarily requires Plaintiff to allege deception— exactly as she does—to state a claim." Id. (citing Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., 114 F. Supp. 3d 1342 (N.D. Georgia 2015)). It says that a violation of §1692e(3) invariably "inflict[s] deceptive harm" on its

6

recipient, and thus that "receipt of a debt collection notice that violates § 1692e(3) constitutes a concrete harm." Id.

The defendant asserts that the legislative history of the FDCPA supports its argument. Id. It asserts that Congress intended to "proscribe[] a debt collector from falsely representing or implying that '[he, she, or it] is an attorney, or that any communication [he, she, or it sends to a debtor] is from an attorney.'" Id. at 9 (citing 15 U.S.C. §1692e(3)). The defendant says that claims arising under this provision are based on fraud and deception, which it argues are textbook bases for suit under common law. Id. (citing Bonchek v. Nicolet Unified Sch. Dist., No. 19-CV-425-JPS, 2019 WL 7049803 (E.D. Wis. Dec. 23, 2019)). The defendant also argues that the cases the plaintiff cites do not address both the §1692e(3) and the "meaningful attorney involvement" standard. Id. at 11.

The plaintiff replies by reiterating the arguments from her initial brief. Dkt. No. 16. She cites Markakos v. Medicredit, Inc., 997 F.3d 778, 780 (7th Cir. 2021) in noting that the Seventh Circuit repeatedly has held that an FDCPA violation, by itself, does not cause a concrete injury. Id. at 2. She also argues that nothing about 15 U.S.C. §1692e(3)—the provision of the FDCPA that prohibits a debt collector from making a false representation or implication that any individual is an attorney or that any communication is from an attorney—distinguishes it from any other provision of the FDCPA in terms of Supreme Court and Seventh Circuit precedent regarding the necessity of a concrete injury. Id. at 4. The plaintiff points out that several of the cases

7

the defendant cites pre-date <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330 (2016) and

<u>Casillas v. Madison Ave. Assocs., Inc.</u>, 926 F.3d 329 (7th Cir. 2019), the cases

from the Supreme Court and the Seventh Circuit that require concrete, actual

injury beyond a procedural error or even an FCDPA violation if the error or

violation caused no harm. <u>Id.</u> at 5.

    B.   <u>Analysis</u>

"If at any time before final judgment it appears that the district court

lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C.

§1447(c)).

Article III standing is an "essential component of Article III's case-or-

controversy requirement," and therefore a "threshold jurisdictional

question." <u>Apex Digital, Inc. v. Sears, Roebuck & Co.</u>, 572 F.3d 440, 443 (7th

Cir. 2009) (citing <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). "[N]o

principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to

actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997).

"Standing to sue is part of the common understanding of what it takes to make

a justiciable case." <u>Id.</u> "Standing is an element of subject-matter jurisdiction in

a federal civil action . . . ." <u>Moore v. Wells Fargo Bank, N.A.</u>, 908 F.3d 1050,

1057 (7th Cir. 2018).

> The "irreducible constitutional minimum of standing contains three
> requirements. *Lujan v. Defenders of Wildlife*, [504 U.S.], at 560 . . .
> First and foremost, there must be alleged (and ultimately proved) an
> "injury in fact"—a harm suffered by the plaintiff that is "concrete"
> and "actual or imminent, not 'conjectural' or 'hypothetical.'"
> *Whitmore v. Arkansas, supra*, [495 U.S. 149], at 149, 155 . . . [1990]

8

(quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 . . . (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 . . . (1976). And third, there must be redressability— a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45-46 . . . ; see also *Warth v. Seldin*, 422 U.S. 490, 505 . . . (1975). This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. See *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 . . . (1990).

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04 (1998). Regarding the "injury in fact" leg of the triad, the injury must be "concrete—it must be "real," not "abstract." Spokeo, 578 U.S. at 340 (citations omitted). The injury also must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way." Id. at 339.

The defendant first implies that the question of standing is not relevant when a case comes to federal court by way of removal; it asserts that "a defendant who invokes federal jurisdiction *through removal* need only to proffer a 'plausible allegation' concerning the Court's basis for jurisdiction and evidence of standing is not required." Dkt. No. 15 at 3. This claim ignores the court's obligation to determine whether it has jurisdiction. The defendant is correct that the cases it cites can be read to support the argument that a *removal notice* need not assert the facts required to demonstrate standing, but the plaintiff has not alleged that the defendant's *removal notice* was defective. She has alleged this federal court does not have jurisdiction because she does not have Article III standing. "Federal courts 'have an independent obligation to

9

ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Bazile v. Finance System of Green Bay, Inc., 983 F.3d 274, 281 (7th Cir. 2020) (quoting Henderson *ex rel.* Henderson v. Shineski, 562 U.S. 428, 434 (2011)). Here, the plaintiff has "called into doubt" the facts necessary for standing, and the court must determine whether it has subject-matter jurisdiction. Id. at 277. The information contained in the removal notice has no impact on that obligation.

Further, because it invoked federal jurisdiction by removing the case, the defendant bears the burden of establishing that the elements of jurisdiction—including Article III standing—existed at the time of removal. Collier, 889 F.3d at 896. See also, Tri-State Water Treatment, Inc. v. Bauer, 845 F.3d 350, 352 (7th Cir. 2017) ("As the party seeking removal, Home Depot bears the burden of establishing federal jurisdiction."). As the plaintiff points out in her brief in support of remand, a case may only be removed to federal court if it originally could have been brought in federal court. Dkt. No. 12 at 7. "Removal is proper only when a case could originally have been filed in federal court." Collier, 889 F.3d at 896 (citing 28 U.S.C. §1441(a)). So the removing party—here, the defendant—must prove that the plaintiff "suffered an injury beyond a statutory violation." Id. The defendant cannot do so.

In 2019, the Seventh Circuit stated unequivocally that an FDCPA violation that does not cause harm does not satisfy the injury-in-fact requirement sufficient to confer standing—as the court put it, "no harm, no

10

foul." Casillas, 926 F.3d at 331-32 (citing Spokeo, 578 U.S. at 342). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." Id. at 332. "[A] plaintiff cannot satisfy the injury-in-fact element of standing simply by alleging that the defendant violated a disclosure provision of a consumer-protection statute." Id. (discussing Groshek v. Time Warner Cable, Inc., 865 F.3d 884, 887 (7th Cir. 2017)).

The Seventh Circuit has noted that in a "slew of cases," it has forclosed the argument that the fact that the FCPA entitles consumers to certain information and the consumer doesn't get that information can constitute an injury-in-fact. Markakos, 997 F.3d at 780 (listing cases, including Casillas). It has explained that "to fulfill the injury in fact requirement, the violation must have 'harmed or presented an "appreciable risk of harm" to the underlying concrete interest that Congress sought to protect.'" Id. (quoting Casillas, 926 F.3d at 333, and Spokeo, 578 U.S. at 342 ("[N]ot all inaccuracies [in a credit report governed by the Fair Credit Reporting Act] cause harm or present any material risk of harm.")).

In Markakos, the Seventh Circuit provided examples of concrete harms that an FDCPA violation could cause. Markakos, 997 F.3d at 780. It explained that "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." Id. (citing Larkin v. Fin. Sys. of Green Bay, Inc., 982 F.3d 1060, 1066 (7th Cir. 2020)). The court distinguished this type of injury from the injury

11

Markakos alleged that she had experienced, observing that Markakos had "not alleged any way in which the alleged misinformation in Medicredit's letters injured her." Id. at 781. Rather, she had "shown the opposite by admitting that she did not pay anything extra and that she properly 'disputed the debt as not warranted by the services provided.'" Id. The court found that the only other injury Markakos had alleged was that she was "confused and aggravated by Medicredit's letter," and noted that it had held that such a grievance was not an injury in fact in that context. Id. (citing Gunn, 982 F.3d at 1071).

The plaintiff alleges FDCPA violations under 15 U.S.C. §1692e, the portion of the FDCPA that addresses false or misleading representations by debt collectors. Under §1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute then gives a list of the kinds of false, deceptive or misleading representations that constitute violations. Relevant to the plaintiff's claims, these examples include:

> (2) The false representation of—
>       (a) the character, amount, or legal status of any debt
>                                . . .
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>                                . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>                                . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §1692e.

The plaintiff also alleges violations of 15 U.S.C. §1692g(b), which addresses validation of debts. Under 15 U.S.C. §1692g(b),

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

The plaintiff's claims relate to allegedly false representations by the defendant in its letter to the plaintiff, representations which the plaintiff says were misleading because they gave the impression that an attorney had participated in the collection process. Dkt. No. 1-1 at 14-15. She says she was "misled and confused" by the letter and that "[t]he unsophisticated consumer would be misled and confused" by the letter. Id. at 6. The Seventh Circuit has repeatedly held that these types of complaints do not constitute concrete injuries sufficient to confer Article III standing. The plaintiff has not alleged that she took any action because of these representations or that she endured any concrete harm. See Larkin, 982 F.3d at 1066 ("[The Plaintiffs] generally alleged in their complaints that certain statements in [the defendant's] collection letters were false, deceptive, or misleading, or unfair and

13

unconscionable, in violation of §§1962e and 1962f. But neither complaint contains *any* allegation of harm—or even an appreciable risk of harm—from the claimed statutory violation.") (emphasis in the original).

The defendant's assertion that being "misled and confused" constitutes a concrete injury is foreclosed by cases like <u>Gunn</u> (holding that a plaintiff must show "a concrete and particularized loss, not infuriation or disgust," 982 F.3d at 1071) and <u>Markakos</u> (confusion and aggravation do not constitute injuries in fact, 997 F.3d at 781).

The defendant cites <u>Bonchek v. Nicolet Unified Sch. Dist., *et al.*</u>, No. 19-CV-425-JPS, 2019 WL 7049803, at *7 (E.D. Wis. Dec. 23, 2019) for the proposition that it is "hornbook law that fraud and deception consistently serve as the basis for lawsuits under the common law." Dkt. No. 15 at 9. It is true that fraud and deception are claims recognized in common law, but that is irrelevant to the issue of whether the plaintiff has alleged a concrete injury in fact. In <u>Larkin</u>, the plaintiffs asserted that because they had brought their claims under §§1692e and 1692f, which prohibit false, deceptive or misleading representations and unfair or unconscionable practices in consumer debt collection, their case was distinguishable from <u>Casillas</u>. <u>Larkin</u>, 982 F.3d at 1065-66. The Seventh Circuit was "not persuaded," finding that the plaintiffs had to allege a concrete injury "regardless of whether the alleged statutory violation is characterized as procedural or substantive." <u>Id.</u> at 1066 (citing <u>Thole v. U.S. Bank N.A.</u>, ___ U.S. ___, 140 S.Ct. 1615, 1621 (2020)). The defendant asserts that fraud and deception "are precisely the substantive

14

harms that Congress enacted the FDCPA to shield debtors from," dkt. no. 15 at 9; this is another way of arguing that because the plaintiff alleges that the defendant violated the substantive provisions of the statute, she must have suffered a concrete injury. Again, the Seventh Circuit rejected that argument in Larkin.

Similarly, the defendant cites TransUnion LLC v. Ramirez, ___ U.S. ___, 141 S. Ct. 2190, 2200 (2021) in asserting that "an intangible harm giving rise to an alleged statutory violation will provide standing for an intangible harm where the allegations of injury have 'a close relationship to harm traditionally recognized as providing a basis for a lawsuit in American courts.'" Dkt. No. 15 at 7 (quoting Spokeo). Ramirez involved a class of 8,185 individuals who sued the TransUnion credit reporting agency under the Fair Credit Reporting Act, alleging that TransUnion did not use reasonable procedures to ensure the accuracy of their credit files. Id. at 2200. Of those 8,185 individuals, TransUnion had provided misleading credit reports to third-party businesses for 1,853. Id. The Supreme Court concluded that "those 1,853 class members ha[d] demonstrated concrete reputational harm and thus ha[d] Article III standing," while the other 6,332 class members whose credit files had not been provided to third-party businesses did not have standing. Id. The Court explained that "reputational harms" were one a type of injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." Id. at 2204. The Court explained that for the 1,853 class members, "TransUnion provided third parties with credit records containing . .

15

. alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals," and that they thus suffered a harm "with a 'close relationship' to the harm associated with the tort of defamation." Id. at 2209. But the Court concluded that the other plaintiffs, for whom TransUnion had not disseminated the alerts to third parties, could not "demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm." Id. at 2210.

The plaintiff has not alleged that she suffered an injury with a "close relationship" to harm traditionally recognized as providing a basis for lawsuits in American courts. She has not alleged that her reputation was harmed. She has not alleged that she was defrauded (and, the court notes, to prove common-law fraud under Wisconsin law, one must prove damages, which the plaintiff has not alleged). She has alleged only that she was misled and confused. The defendant is correct that the FDCPA prohibits debt collectors from misleading or confusing consumer debtors, but to have Article III standing, the plaintiff must allege that being misled and confused caused her a concrete injury.

The defendant cites several cases for the proposition that simply receiving a notice "allegedly imbued with deceit to persuade Plaintiff to act" is sufficient injury to confer standing. Dkt. No. 15 at 10. It cites Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), Boyd v. Wexler, 275 F.3d 642 (7th Cir. 2001) and Nielsen v. Dickerson, 307 F.3d 623 (7th Cir. 2002). Id. The defendant is correct that in Avila, the Seventh Circuit held that letters on law firm letterhead,

advising a debtor that if payment is not received a civil suit may be initiated, which were not actually prepared, signed or reviewed by a lawyer violated the FDCPA. It is correct that in <u>Boyd</u>, the Seventh Circuit reached the same conclusion five years later. And it is correct that the court reached the same conclusion a year after that in <u>Nielsen</u>. And it is correct that none of these cases have been explicitly overruled. What the defendant neglects to mention, as the plaintiff points out in her brief, is that these cases were decided years before the Supreme Court's decision in <u>Spokeo</u>, and years before the Seventh Circuit's decisions in <u>Casillas</u>, <u>Larkin</u> and <u>Markakos</u> as well as the "slew" of other Seventh Circuit cases finding that a violation of a substantive provision of the FDCPA, standing alone, does not constitute a concrete injury-in-fact. These cases are no longer good law, and for the defendant to assert that they are borders on frivolous.

The defendant also cites two recent district court decisions in which it alleges the courts did not require "detrimental reliance." Dkt. No. 15 at 10-11. It cites, for example, <u>Bencomo v. Forster & Garbus LLP, *et al.*</u>, No. 18-cv-1259-JPS, 2019 WL 3082502 (E.D. Wis. July 15, 2019). <u>Bencomo</u> was decided three years after <u>Spokeo</u>, but the Seventh Circuit had issued its decision in <u>Casillas</u> only a month or so earlier, on June 4, 2019. And there is no indication that the defendant in <u>Bencomo</u> challenged the plaintiff's standing. The defendant also cites <u>Trivedi v. BD 112A LLC, *et al.*</u>, No. 18-CV-313, 2020 WL 736239 (E.D. Wis. Feb. 13, 2020). Again, there is no evidence that anyone raised the issue of standing in <u>Trivedi</u>. This court cannot comment on why a judge might not raise

17

the standing issue *sua sponte*, and the answer would not be relevant. Here, the plaintiff *has* raised the standing issue and the court is obligated to resolve it.

The defendant asserts that none of the cases the plaintiff cites involved alleged violations of §1962e(3), asserting that this is a case of first impression. Dkt. No. 15 at 14. It asserts that the cases the plaintiff cited involved letters containing incomplete, inaccurate or inconsistent information, not deceptive or misleading information. Id. The defendant highlights a distinction without a difference. The Seventh Circuit has addressed standing in the context of alleged violations of other provisions of §1692e; the defendant provides no explanation for why a plaintiff alleging violations of those other provisions must allege a concrete injury in fact but a plaintiff who alleges violations of §1692e(3) need not do so.

In a footnote, the defendant observes that Seventh Circuit panels that have decided the standing cases cited by the plaintiff have not always been unanimous. Dkt. No. 15 at 14 n.1. This argument assumes that this district court has the authority to ignore binding precedent set in multiple majority opinions and forge its own path based on reasoning culled from dissenting or concurring opinions. Regardless of whether those concurring and dissenting opinions contain compelling logic or were written by esteemed and brilliant jurists, that is not how the American system of precedent works. This court is bound by the majority opinions, which are consistent in their rejection of arguments like those raised by the defendant.

The defendant attempts to recharacterize the precedent that defeats its arguments. It claims that the plaintiff has asked the court to remand the case "because upon receipt of the G-notice, her knees apparently did not knock;" the defendant asserts that the plaintiff need not allege a tangible harm to state an injury in fact and that "[a]ctual knee-knocking is not required." Id. at 15.[2] This is silly; multiple Supreme Court and Seventh Circuit cases hold that intangible harms (like the reputational injury in Ramirez) can constitute an injury in fact. The point is that not *every* intangible harm states an injury in fact, and no amount of clever wordsmithing changes the fact that being misled and confused is not sufficient under Seventh Circuit law.

Because the plaintiff has not alleged a particularized, concrete injury in fact sufficient to confer Article III standing, the court does not have subject-matter jurisdiction over the case. The court must grant the plaintiff's motion to remand the case to Milwaukee County Circuit Court.

## III.    Fees and Costs

That means the court must consider the plaintiff's request for fees and expenses. Under 28 U.S.C. §1447(c), the court has the discretion to award attorneys' fees and expenses incurred due to the defendant's attempt to remove the case to federal court. "An order remanding the case may require payment of

---

[2] The defendant appears to have borrowed the "knee-knocking" language from one of the Seventh Circuit's—and this court's—most colorful and humorous writers, Judge Terry Evans, who said in Avila that creditors' dunning campaigns often escalate from collection agencies, "which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." Avila, 84 F.3d at 229.

19

just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141. "[I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then the district court should award a plaintiff his attorneys' fees." Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007).

The plaintiff asserts that the defendant's choice to remove the case was objectively unreasonable given Seventh Circuit case law on Article III standing. Dkt. No. 12 at 7. She asserts that in its answer, the defendant "affirmatively asserted that this Court does not have jurisdiction." Id. (citing Dkt. No. 7 at p. 15, ¶8). The plaintiff says that one of the reasons she filed her case in state court was because of the multiple Seventh Circuit cases finding that "FDCPA plaintiffs did not have standing in federal court." Id. at 8. The plaintiff speculates that the defendant intended to obtain a judgment on the merits in federal court, and that if it did not do so, it intended to move for dismissal for lack of jurisdiction. Id.

The defendant responds that the plaintiff has not demonstrated that it lacked an objectively reasonable basis for removing the case to federal court.

20

Dkt. No. 15 at 17. It asserts that the plaintiff waited five months after removal to file its motion for remand—after a scheduling conference and after engaging in discovery—although several of the cases the plaintiff cites were decided years earlier. Id. The defendant concludes that "under *Spokeo* and *Ramirez*, Plaintiff's allegation of deception is sufficient to confer standing." Id. And it asserts that "*Avila*, *Boyd*, and *Nielsen* remain binding precedent in the Seventh Circuit" and that those cases "stand for the proposition that a plaintiff who *receives* a debt collection notice in violation of the FDCPA's 'meaningful attorney involvement' standard has suffered a concrete injury sufficient for purposes of Article III standing . . . ." Id. Based on these arguments, it claims to have "two objectively reasonable bases for removal at its disposal." Id. at 18.

The court will grant the plaintiff's request to award fees and costs. The defendant's strenuous arguments that the plaintiff suffered a concrete injury are brazen given the eighth affirmative defense asserted in the answer: "Plaintiff's claim under the FDCPA is barred because Plaintiff has not suffered any actual damages or an injury-in-fact, and thus, under Article III of the U.S. Constitution, Plaintiff does not have standing to bring this claim." Dkt. No. 7 at page 15, ¶7 . Its assertion that Spokeo and Ramirez hold that deception constitutes injury in fact is disingenuous. Its claim that Avila, Boyd and Nielsen remain binding precedent borders, as the court has said, on frivolous. The defendant's assertion that none of the many Seventh Circuit cases discussing concrete injury in FDCPA cases discusses §1692e(3) is a distinction without a difference. And the defendant's failure to even attempt to distinguish

the reasoning in <u>Larkin</u>, arguably the case most harmful to its position, is telling.

It was objectively unreasonable for the defendant to remove the case to federal court because established case law was clear at the time of removal that the plaintiff had not alleged a concrete injury sufficient to confer Article III standing. The court will order the defendant to pay attorneys' fees and costs under 28 U.S.C. §1447(c).

## IV. Conclusion

The court **GRANTS** the plaintiff's motion to remand to Milwaukee County Circuit Court. Dkt. No. 11.

The court **ORDERS** that the case is **REMANDED** to Milwaukee County Circuit Court.

The court **GRANTS** the plaintiff's motion for an award of costs and fees incurred as a result of the removal. Dkt. No. 11.

The court **ORDERS** that by the end of the day on **August 26, 2022**, the plaintiff must file an accounting of the costs and attorneys' fees incurred as a result of the defendant's removal of the case to federal court. The court **ORDERS** that if the defendant wishes to object to the accounting, the defendant must file its objection by the end of the day on **September 2, 2022**.

Dated in Milwaukee, Wisconsin this 12th day of August, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

22